*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ADAM TROY TURNER,

        Plaintiff-Appellant,

v

JANE RENEE TURNER,

        Defendant-Appellee.

UNPUBLISHED
July 14, 2025
9:24 AM

No. 370285
Branch Circuit Court
LC No. 2022-050243-DO

Before: BOONSTRA, P.J., and REDFORD and MARIANI, JJ.

PER CURIAM.

Plaintiff appeals as of right the parties' judgment of divorce insofar as it awarded defendant $123,571 "representing one-half of the net marital equity" in the marital home. We affirm.

## I. FACTS

The parties began living together in 2014, and married on September 2, 2017. On May 20, 2022, after more than four years of marriage, plaintiff filed a complaint for divorce. Defendant left the marital home shortly thereafter.

During the period of cohabitation, then marriage, the parties resided in a house that plaintiff had independently acquired many years before the marriage. Plaintiff testified that he built the house in 2006 with funds borrowed from his 401(k)[1] retirement account, plus a bank loan, and thereafter directed 40 percent of his employment earnings toward paying off the house. By the time the parties married in 2017, plaintiff had accumulated substantial equity in the house. During the marriage, the appraised value of the house appreciated significantly, even though no major improvements or additions were made.

---

[1] 26 USC 401(k).

According to plaintiff, during the marriage, he paid all the house-related expenses, including the mortgage, taxes, and maintenance, but defendant "never contributed to the house in any fashion."

According to defendant, plaintiff directed $600 or $800 from his paychecks into a "separate account" from which the mortgage and escrow were paid, but defendant also contributed her employment income to the household. Until June 2020, defendant did so by depositing her paychecks directly into plaintiff's bank account; afterward, she continued to give plaintiff money from her paychecks for household expenses. She testified that her income, although less than plaintiff's, "was more than enough to cover the food, the electric bill, . . . the gas bill, . . . the household living expenses." According to defendant, plaintiff controlled the marital funds.

During the divorce proceedings, plaintiff argued that the house remained his separate property, and therefore that it was nonmarital property and the appreciation in its value during the marriage was solely attributable to him and properly excluded from the marital estate. He further argued that the equities favored a minimal distribution to defendant, citing the marriage's short duration, defendant's fault for its breakdown, and his significant financial contributions. Plaintiff similarly argued that the appreciation in the value of his 401(k) account during the marriage, excluding the contributions made to it during the marriage, was his separate property.

Defendant, meanwhile, argued that the increase in the marital home's equity value that occurred during the marriage, which she calculated to be $247,142, was part of the marital estate subject to equitable division, and that she was entitled to half of it. She contended that the parties shared and maintained the home, and that she contributed her entire income to the household both before and during the marriage. She similarly argued that she was entitled to half of the net increase in the value of the parties' 401(k) accounts that occurred during the marriage. Defendant alternatively argued that, even if the home's marital equity were treated as plaintiff's separate property, she was entitled to invade it because she contributed to its acquisition, accumulation, or improvement, and the marital assets were not otherwise sufficient for her support and maintenance.

The trial court issued an opinion and order stating that it "adopts the law logic and rationale of Defendant[']s brief as it pertains to the division of equity in the marital home and the 401k of the parties for the Court is not convinced that the precepts held by the Plaintiff are novel to the point to overcome well established caselaw."

On March 8, 2024, the trial court entered a judgment of divorce, awarding plaintiff the house while ordering him to pay defendant $123,571 "representing one-half of the net marital equity." The court also awarded defendant $38,098.84 from plaintiff's 401(k), which equalized the marital increase in the parties' 401(k) accounts. The court awarded the parties their own respective personal property and bank accounts, and awarded defendant a life insurance policy. This appeal followed.

## II. STANDARDS OF REVIEW

"In a divorce action, this Court reviews for clear error a trial court's factual findings on the division of marital property and whether a particular asset qualifies as marital or separate property." *Hodge v Parks*, 303 Mich App 552, 554; 844 NW2d 189 (2014). "Findings of fact are

clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made." *Id.* at 555 (quotation marks and citations omitted). "This Court further reviews whether a trial court's dispositional rulings are fair and equitable in light of the trial court's findings of fact, but this Court will reverse only if definitely and firmly convinced that the disposition is inequitable." *Id.* (quotation marks and citations omitted). This Court reviews questions of law de novo. *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010).

## III. ANALYSIS

Plaintiff argues that the trial court erred in awarding defendant half of the increase in the value of the home's equity that occurred during the marriage. We disagree.

As this Court has broadly summarized:

> The distribution of property in a divorce is controlled by statute.[2] In granting a divorce, the court may divide all property that came to either party *by reason of the marriage*. When apportioning marital property, the court must strive for an equitable division of increases in the marital assets that may have occurred between the *beginning* and the end of the marriage. Thus, the trial court's first consideration when dividing property in divorce proceedings is the determination of marital and separate assets. . . . Generally, the marital estate is divided between the parties, and each party takes away from the marriage that party's own separate estate with no invasion by the other party. [*Reeves v Reeves*, 226 Mich App 490, 493-494; 575 NW2d 1 (1997) (cleaned up).]

According to plaintiff, the trial court erred by failing to recognize that the appreciation in the home's equity value that occurred during the marriage was his separate property, rather than part of the marital estate subject to equitable division. "Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage." *Cunningham*, 289 Mich App at 201. "The categorization of property as marital or separate, however, is not always easily achieved," *id*.:

> While income earned by one spouse during the duration of the marriage is generally presumed to be marital property, there are occasions when property earned or acquired during the marriage may be deemed separate property. . . . Moreover, separate assets may lose their character as separate property and transform into marital property if they are commingled with marital assets and treated by the parties as marital property. The mere fact that property may be held jointly or

---

[2] MCL 552.19 provides as follows:

> Upon . . . a divorce from the bonds of matrimony . . . , the court may make a further judgment for restoring to either party the whole, or such parts as it shall deem just and reasonable, of the real and personal estate that shall have come to either party by reason of the marriage, or for awarding to either party the value thereof, to be paid by either party in money.

individually is not necessarily dispositive of whether the property is classified as separate or marital. [*Id.* at 201-202 (quotation marks and citations omitted).]

"The actions and course of conduct taken by the parties are the clearest indicia of whether the property is treated or considered marital, rather than separate, property." *Id.* at 209.

In *Reeves*, 226 Mich App at 495-496, this Court addressed the extent to which the increase in the value of a marital home's equity that occurred during the marriage was marital property subject to division when, as here, one party owned the marital home before the marriage:

> [The] defendant provided a $14,000 down payment for the condominium before the parties married, and equity was built up in the condominium as a result of payments solely made by [the] defendant before the parties married. The sharing and maintenance of a marital home affords both spouses an interest in any increase in its value (whether by equity payments or appreciation) over the term of a marriage. Such amount is clearly part of the marital estate. However, the down payment, the equity built up before the parties' marriage, and any appreciation that occurred before the parties' marriage should have been considered [the] defendant's separate estate.

This Court addressed a similar situation in *Korth v Korth*, 256 Mich App 286, 292-293; 662 NW2d 111 (2003):

> [The defendant] purchased the [subject] property in 1989, before the parties were married, for $11,000. In 1992 or 1993, after the parties were married, [the] plaintiff's name was added to the deed for the property. The land was cleared in 1993 and the building of the house began in 1994. [The defendant] and his friends did most of the work on the house, but [the] plaintiff contributed between five and ten percent of the work. While she was staying at the property, [the] plaintiff would do the cooking, cleaning, and other chores. The parties invested approximately $55,000 in the property. Of this $55,000, about $7,500 came from [the] plaintiff and the rest came from [the] defendant.
>
> Because [the] plaintiff contributed to the improvement of the property after the parties were married, the trial court properly considered the equity in the property after the marriage as part of the marital estate. . . . [T]he sharing and maintenance of a marital home gives both spouses an interest in any increase in value during the course of the marriage. This increase in value is part of the marital estate.
>
> However, the down payment, the equity built up before the parties' marriage, and any appreciation that occurred before the marriage should be considered part of defendant's separate estate. Therefore, the trial court should have included in the marital estate the appreciation in the property after the parties were married, but should not have included the equity values of the property before the marriage. [(Citations omitted.)]

The trial court's handling of the equity value of the home at issue in this case duly aligns with this precedent. *Reeves* is particularly instructive. Here, plaintiff individually acquired the house years before the parties married, as did the defendant in *Reeves*. And, by the time the parties married, plaintiff had significantly paid down the attendant debt and accumulated substantial equity.[3] Although plaintiff testified that he paid all of the house-related expenses, defendant also contributed her income to the household by giving her paychecks to plaintiff, who controlled the marital funds. Indeed, plaintiff admits that defendant "contributed her paycheck to the maintenance of the home to pay bills, food, and other expenses."[4] As explained in *Reeves*, 226 Mich App at 495-496, "[t]he sharing and maintenance of a marital home affords both spouses an interest in any increase in its value (whether by equity payments or appreciation) over the term of a marriage," and "[s]uch amount is clearly part of the marital estate." See also *Korth*, 256 Mich App at 292-293. Correspondingly, the trial court in this case recognized plaintiff's premarital equity interest in the home as his separate property, and treated the increase in the home's equity value that occurred during the marriage as marital property subject to division.

Plaintiff argues that *Reeves*, in fact, supports his position that the home's appreciation in value during the marriage should be viewed as his separate property. The part of *Reeves* upon which plaintiff relies, however, did not involve the marital home shared and maintained by the parties in that case; instead, the asset at issue was the defendant's "one-sixth ownership interest in [a] shopping center resulting from a capital investment made" before the parties married. *Id.* at 492. This Court explained that the appreciated interest in this asset was not part of the marital estate because, "[u]nlike the situation with the condominium" that served as the parties' marital home, the "defendant's minority interest in the [shopping center] was wholly passive at all times" and "[i]t cannot be stated . . . that the property appreciated because of defendant's efforts, facilitated by plaintiff's activities at home." *Id.* at 497. As with the marital home in *Reeves*, the home at issue in this case cannot reasonably be characterized as a wholly and at all times passive investment. Instead, the home functioned as the parties' marital residence, which they shared and

---

[3] Although the parties lived together in the home before they married, during which defendant contributed in covering household expenses, periods of nonmarital cohabitation are not considered when apportioning marital property. See *Reeves*, 226 Mich App at 493 n 1 ("Michigan does not recognize common-law marriages," and so a court should not consider "any cohabitation that may have occurred before the parties marry.") (citation omitted).

[4] Plaintiff argues that these admitted contributions by defendant are immaterial because they "were not for the acquisition, improvement, or accumulation" of the home. That argument, however, seemingly presumes that the appreciation in value of the home during the marriage was not part of the marital estate, and its division would require invasion of plaintiff's separate estate. See *Reeves*, 226 Mich App at 494-495 (explaining that the separate estate of spouse may only be invaded in two statutorily specified circumstances, including "when the other spouse 'contributed to the acquisition, improvement, or accumulation of the property' "), quoting MCL 552.401. For the reasons discussed above, we conclude that the appreciation in value of the home was, in fact, properly deemed to be a part of the marital estate and subject to division as such. Correspondingly, given that conclusion, we need not address defendant's alternative argument that, even if the trial court had treated the equity at issue as separate property, invasion would have nonetheless been appropriate under MCL 552.401 or MCL 552.23(1).

jointly maintained with income earned during the marriage—income that is presumed to be marital property. See *Cunningham*, 289 Mich App at 201. That the marital home was *not* plaintiff's passive investment was apparent from the parties' active engagement in, and contributions to, its maintenance during the marriage. Under this Court's caselaw, including *Reeves*, such circumstances indicate that the appreciation of the home during the marriage was "clearly part of the marital estate." 226 Mich App at 496. Accordingly, on the record before us, we see no error in the trial court treating the increase in the home's equity value that occurred during the marriage as marital property subject to division.

Plaintiff further argues that the trial court failed to articulate adequate findings and conclusions regarding the marital or separate character of the increase in the home's equity value, because it merely adopted the law, logic, and rationale of defendant's trial briefs. MCR 3.210(D) provides that the trial "court must make findings of fact as provided in MCR 2.517." MCR 2.517(A)(1) directs that, in an action tried without a jury, the court must "find the facts specifically" and "state separately its conclusions of law." "Findings of fact regarding matters contested at a bench trial are sufficient if they are '[b]rief, definite, and pertinent,' and it appears that the trial court was aware of the issues in the case and correctly applied the law, and where appellate review would not be facilitated by requiring further explanation." *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 176; 530 NW2d 772 (1995)), quoting MCR 2.517(A)(2) (alteration in original). "[T]his Court must review a trial court's findings in the context of the specific legal and factual issues raised by the parties and the evidence." *People v Lanzo Constr Co*, 272 Mich App 470, 479; 726 NW2d 746 (2006) (quotation marks and citation omitted).

As plaintiff asserts, the trial court did not explicitly specify which ground advanced by defendant it adopted for dividing the marital home's equity, instead stating that it was adopting defendant's briefing in that regard. In her trial briefs, defendant primarily argued that the increase in the home's equity value that occurred during the marriage should be equally divided as part of the marital estate. But she alternatively argued that, even if that amount were part of plaintiff's separate estate, it would be appropriate to divide it equally under MCL 552.401 and MCL 552.23(1).

We agree with plaintiff that the trial court certainly could have presented its findings more fully and explicitly. We believe, however, that they make sufficiently clear in this case that the trial court found that the increase in the value of the home's equity that occurred during the marriage was marital property. Indeed, the court reinforced that understanding of its determination in its subsequent opinion denying plaintiff's motion for reconsideration when it stated that "[t]he *division of the marital estate* is not one of pinpoint precision of one asset but an assessment of the entire estate including offsets where equity can be had and supported by the evidence at hand." (Emphasis added.) Moreover, the divorce judgment itself awarded $123,571 to defendant "representing one-half of the net *marital* equity" in the house. (Emphasis added.) We note that $123,571 is exactly half of the increase in the home's equity value that occurred during the marriage, as calculated by defendant in her supplemental trial brief—further signaling that the court, consistent with defendant's briefing, properly distinguished the home equity plaintiff built up before the marriage from the increase in equity that took place during the marriage, and treated only the latter as marital property subject to equitable division. See *Reeves*, 226 Mich App at 495-496. Accordingly, the court's findings were adequate in this case to demonstrate that the "court

was aware of the issues in the case and correctly applied the law," and "appellate review would not be facilitated by requiring further explanation." *Triple E Produce*, 209 Mich App at 176.[5]

Affirmed.

/s/ Mark T. Boonstra
/s/ James Robert Redford
/s/ Philip P. Mariani

---

[5] In his reply brief, plaintiff also argues that, in dividing the home's equity value between the parties, the trial court erred by failing to make findings under the factors identified in *Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992). Plaintiff did not raise *Sparks* in his principal brief on appeal, rendering this argument not properly presented for review. See, e.g., *Bronson Methodist Hosp v Michigan Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012). We also do not see particular merit in the argument. Although the trial court, in its ruling, did not make express findings as to the *Sparks* factors, the record makes clear that, through the parties' arguments and testimony, the trial court was made aware of the parties' respective contributions to maintaining the home, their relative needs and earnings ability, the short duration of their marriage, and their respective conduct. See *Sparks*, 440 Mich at 159-160. And defendant's briefing, which the trial court's ruling adopted by reference, invoked such considerations in requesting an equal share in the marital equity. Given this record, as well as the presumptive goal of attaining congruence in dividing the marital estate, see *McNamara v Horner*, 249 Mich App 177, 188; 642 NW2d 385 (2002), we are not definitely and firmly convinced that the trial court's roughly equal division of the marital estate, including the increase in the marital home's equity that occurred during the marriage, was inequitable or unfair. See *Sparks*, 440 Mich 151-152.